THE STATE *vs.* MICHAEL FAINO.

New Castle County, September Term, 1894.

**Criminal Law. Evidence.**—Evidence of the effect of intoxicating liquors upon a person charged with crime is admissible in his own behalf.

**Same.**—On the trial of an indictment for murder, the reputation for peace and good order of the deceased is not admissible where it is not claimed the deed was committed in self-dence.

**Criminal Law. Murder. Malice.**—Whenever one person is killed by another, unless it be under the sentence of law, it is presumed in law to be unlawful and to have been done with malice aforethought until the contrary appears.

**Same.**—If the jury are satisfied from the proof that the prisoner wounded the deceased with the intent to kill him, in pursuance of a sedate and deliberate mind. and formed designed to take his life, or to do him some great severe bodily injury, although such design may not have been formed until the precise time of the killing, it would be murder of the first degree.

**Criminal Law. Drunkenness.**—As a general rule drunkenness is no excuse for crime; but this rule has been relaxed to the extent that it may reduce the grade of murder from the first to the second degree where the prisoner was so drunk as to be utterly incapable of forming a specific intent or deliberate design to kill.

**Criminal Law. Murder.**—Where a homicide is committed in a sudden brawl or quarrel under provocation, in the heat of passion, without time for deliberation. or reflection, or without cooling time, it is manslaughter.

**Same.**—To reduce a homicide to manslaughter where death is produced by a deadly weapon the provocation must be very great, and no mere words, however insulting, or irritating gestures, or weak assault will constitute such provocation.

At a Court of Oyer and Terminer held in Wilmington on September 24, 1894, Michael Faino was indicted and tried for the crime of murder in the first degree for the felonious killing of Carlo Ruvo on the 20th of April, 1894.

The evidence adduced on the part of the State tended to show the following facts:

That on the evening of the 20th of April, between 8 and 9 o'clock, the prisoner was playing bagatelle in the public house, No.. 105 Market street, with four comrades of his own nationality, one of whom, Carlo Ruvo, was the victim of the murder. While so engaged an altercation arose between the prisoner and the said Ruvo as to a shot which Faino had made; that opprobrious epithets were used by both men towards each other, but no blows were struck; that the game between the Italians was then interrupted by the son-in-law of the proprietor and the quarrel was stopped temporarily, but was afterwards renewed, and the said Italians. were only kept from a combat by the proprietor of the saloon.

standing between them; that the prisoner was then turned toward the door, and at the desire of the proprietor walked out the door ou Market street, going down towards Front street; that Ruvo and two of the Italians who had been engaged in the game of bagatelle remained in the saloon after the departure of Faino for about ten minutes; that they then went across Market street to No. 102, where one of their companions had gone at the beginning of the trouble between Faino and Ruvo, and asked him to go with them to No. 104 Market street for the purpose of playing a game of cards; that the four Italians went to No. 104, which was a candy, fruit and cigar store kept by Mrs. Mary Dezimone; that they obtained her consent to play a game of cards and repaired to the back room, which was separated from the front or store room by a partition about six feet high, which had a small window cut through it near the centre, and also a door, which was opposite the show window in the front room; that they seated themselves at a table directly opposite said door, Ruvo occupying the seat nearest the door and towards Market street; that they had dealt the cards and had made one play, when Faino entered the door quietly, came towards the back and right side of Ruvo, and with the expression, " Are you going to stop calling me bastard " (*cornuto* in the Italian language), struck Ruvo a blow in the neck with a dagger, the blade of which was about five or six inches long; that Ruvo jumped from his seat, whirled around, threw his hands against the face of Faino and both went down upon the floor, with Ruvo on top, falling against and overthrowing a table in the descent; that Ruvo was then seen bleeding and was approached by one of his companions and asked if he was hurt, but made no reply, only gasped and died almost instantly; that in the meantime the prisoner arose, went out through the door into the storeroom, mutter- " there is something wrong in here to-night," and he was then seen to throw the bloody knife or dagger under the projection of the bulk window in the front of the storeroom; that he then proceeded down Market street, across Market street bridge and along the marshes and fields to the uncovered bridge of the W. & N. Rail-

road, beyond which he was soon caught by a police officer and found to be covered with blood.

There was also testimony tending to show that about the time that Faino left for the saloon at 105 Market Street, someone was heard to enter the room where Faino lived at Front and West Streets, by an inmate of the house, and Faino was seen a few minutes thereafter by the same witness and another crossing West Street going down Front towards Market.

The witness, Mary Dezimone, also testified that when Faino approached her store he was coming up Market Street from the direction of Front, and that he looked through the show window before entering her store, and when asked by her what he wanted, made no reply, but went in through the store into the back room, where the game of cards was being played; and immediately thereafter she heard the crash of the dishes, and rushed into the room and found the men upon the floor.

The defence produced testimony showing that the prisoner had received a severe wound upon the top of the head many years ago in Italy by falling from the top of a stone wall, and that since that time a small quantity (two or three glass) of intoxicating liquor, such as beer, tended to inflame his passions and affect his temperament materially; that on the night in question he had drunk a number of glasses of beer and was "pretty full."

It was contended for the defendant that from the proof the death stab was not given while the deceased was sitting in the chair, but that it was given during the struggle which followed, and that, therefore, as it was a fight and done in the heat of passion, the prisoner could only be convicted of manslaughter, or at most, of murder in the second degree. It was also contended that owing to the intoxicated condition of the prisoner on the night of the alleged crime, and the peculiar effect which intoxicating liquors had upon his temperament, he was rendered incapable of mature deliberation and premeditation, which must reduce the crime below the grade of murder in the first degree.

In the course of the trial the following questions were objected to and ruled upon:

Salvatori Ververbino, being produced by the defendant, was asked by Mr. Byrne, "have you you ever, at any time observed the effect of intoxicating liquors upon the prisoner?"

Objected to by the Attorney General, who contended that it was irrelevant; against all the rules of evidence, and misleading to the jury.

CULLEN, J. The question the jury are to decide is, whether he could form, under those circumstances, a design to kill. It is a mere matter of testimony. He has asked the witness, not as an expert, but as to a fact or what he knows. He is inquiring when he took a drink of liquor, what was the effect upon him? Some men may take a drink of liquor and not be affected, and others cannot take it without they are affected. That has to be followed up by showing what the condition of this man was at the time this offence was committed. The mere fact of drunkenness, of course, has nothing to do with it, but this matter of destroying the man's power of forming a design, is something else.

The objection was overruled and the question allowed.

Q. "Do you know the reputation for peace and good order of Carlo Ruvo, sometimes called Charley White, in the community wherein he lived, at, and prior to the time of the alleged act, and what do you know of the habits of Charley White, or Carlo Ruvo, in relation to his general character for violence?"

Both of the above questions were objected to, on the ground of irrelevancy.

Mr. Hilles stated that he would follow those questions up by proof that the defendant knew of the character of the deceased.

LORE, C. J. "Do you contend that the stab was given by the prisoner in self-defence?

Mr. Hilles. "I am not contending that it was a case of self-

defence, but my purpose is to show that the blow, which resulted in the death of Carlo Ruvo, was not dealt with that degree of malice which makes it murder in the first degree.

LORE, C. J. We do not think it admissible, unless your plea is one of self-defence.

Paulino Faino was produced by the defendant and asked by Mr. Hilles, " did any accident ever happen to your brother (the prisoner) in the old country, if so, what was it.

Objected to, unless the plea of insanity is set up.

*Mr. Hilles.* I don't know that we need to inform the State just exactly what the testimony is to be. Certainly if there was any effect upon this man's mind by reason of the accident which occurred to him, even if it did not amount to insanity, I take it the jury are entitled to know it.

LORE, C. J. We will admit the testimony subject to the charge of the court.

*Nicholson,* Attorney General, and *Giles,* Deputy Attorney General, asked for the following instructions, among others:

Any unlawful and injurious act committed intentionally, without just cause or excuse denotes malice; Kelyng 127; 1 Hawks. Pl. Cr. 95; 1 Archb. Cr. Pr. & Pl. 746; 2 Bouv. Law Dict. *tit. Malice; Martinez vs. State,* 16 S. W. Rep. 767; *State vs. Green,* 1 Houst. Crim. Rep. 217, 223.

When the crime of murder is committed with a sedate, deliberate mind and formed design to take the life of *or to do some great or serious bodily injury to the person killed,* it is murder with express malice aforethought at common law and of the first degree under the statute; *State vs. Jones,* 1 Houst. Cr. Rep. 17; *State vs. Buchanan, id.* 79; *State vs. Gardner, id.* 146; *State vs. Greene, id.* 217; *State vs. Woodward, id.* 455; *State vs. Brown, id.* 539; 2 Roscoe's Cr. Ev. 760.

No specific length of time is necessary to make an act a deliberate act in legal contemplation. If the design to take the life of, or to do some great or serious bodily injury to the person killed be but the conception and intention of a moment, it is deliberate in legal contemplation as if it had been the designs of hours.

Deliberate in its legal sense denotes purpose and design in contradistinction to accident and mischance. *State vs. Costen,* 1 Houst. Cr. Rep. 340, 347 ; *State vs. Webster,* Bemis. 458 ; *State vs. Green,* 1 Houst. Cr. Rep. 217, 225 ; *State vs. Pratt, id.* 249, 262 ; *Seam vs. State,* 4 So. Rep. 521.

Provocation to avail anything must be something which the slayer feels at the instant of its occurrence, and he must act under the sting of that provocation, and resent it at once without delay or time for thought or reflection. If, between the provocation and the act of violence causing the death, there intervenes sufficient time for passion to subside, or the blood to cool, or time under the circumstances for the exercise of reflection and the formation of a deliberate purpose in respect to the act which he is about to do provocation will not avail anything. *State vs. Costen,* 1 Houst. Cr. Rep. 340.

Nor can it alter or mitigate the grade or degree of the murder that the party was at the time in part excited or inflamed with intoxicating liquor, as well as anger and passion, or was intoxicated, if he had sufficient knowlege, thought, and reflection left to be able to exercise and to show such deliberation and choice and to form such design. *State vs. Gardner,* 1 Houst. C. Rep. 146–149.

Manslaughter in contemplation of law, can only occur in an assault and battery when both are combatants in it, or have been, and one of them in the heat of blood or transport of passion produced by it, deals the other a fatal blow or suddenly seizes without deliberation or premeditation and before he has had time to cool, a deadly weapon or dangerous instrument and inflicts a mortal wound upon him, but not when the other is but the passive and

unresisting recipient and victim of the blows of the other party;
*State vs. Hamilton,* 1 Houst. Cr. Rep. 101, 104.

No mere words, however insulting or provoking they may be,
and however much they may exasperate a defendant or excite his
anger and passion and heat his blood, will constitute a sufficient
provocation for an assault; *State vs. Draper,* 1 Houst. Crim. Rep.
531.

The plea of self-defence cannot enter into the deliberation of
the jury in this case in making up its verdict. The prisoner has
excluded such a defence by his admission that the crime is at least
manslaughter. Self-defence is an entire and complete defence or it
is no defence at all.

The defence of drunkenness, such as is alleged in this case,
can under no circumstances reduce the crime below the grade of
murder in the second degree.

*William S. Hilles* and *William Michael Byrne,* for the defend-
ant, requested that the following instructions, among others, be
given to the jury:

The homicide as charged in the indictment being proved, the
law presumes that it was committed with malice unless the contrary
appears upon the proof produced at the trial, but it goes no fur-
ther than to imply malice, and therefore the legal presumption goes
no further in such a case than that it is murder in the second de-
gree under our statute; *State vs. O'Niel et al.,* Houst. Crim.
Rep. 58.

If the jury believe that the killing was done on provo-
cation, but that sufficient time had elapsed for the blood to cool, for
passion to subside and reason to interpose, it would be murder of
the second degree. *State vs. Frazer,* Houst. Cr. Rep. 176, 199.

There are no precise limits of time within which the blood
may be supposed to cool, passion to subside and reason to in-
terpose, but every case depends upon its own circumstances, and the
cooling time would be what was reasonable under the circumstances

of the case. *State vs. Frazer*, Houst. Cr. Rep. 176, 199 ; *State vs. Till*, *id*. 233, 246.

If the jury believe from the evidence that owing to the prisoner's intoxication, the condition of the prisoner's mind and his mental capacity were such that he was unable to form a specific intent or a deliberate design to kill the deceased, they cannot find the prisoner guilty of murder in the first degree. *State vs. Bowen*, Houst.. Cr. Rep. 91–96 ; *State vs. Hurley*, *id*. 28, 36 ; *State vs. Frazer*, *id*. 176, 198.

If the jury believe from the evidence that the homicide was committed by the accused in a state of intoxication and by a certain provocation given him by the party killed, and when a smaller provocation may be allowed to alleviate the offense and reduce it from murder in the first to murder in the second degree under the statute, owing to the well-known fact that a person in that condition is more liable to be suddenly heated and blinded to a higher degree of angry passions than a sober man would be under the same or similar provocation, they should find the prisoner guilty of murder in the second degree. *State vs. Hurley*, Houst. Cr. Rep. 28, 36.

LORE, C. J., (charging the jury.)

On the twentieth day of April, 1894, at No. 104 Market Street, in this city, Carlo Ruvo was killed. He was stabbed or cut in the neck by Michael Faino, the prisoner, with a long, sharp-pointed knife, which has been shown to you; the carotid artery was severed and death ensued almost instantly.

For this homicide the prisoner is indicted for the crime of murder in the first degree.

Under this indictment, if warranted by the proof, you may find the prisoner guilty of murder of the first degree, or of murder of the second degree, or of manslaughter.

It is therefore necessary that you should be instructed by the Court, as to what constitutes these three grades of homicide.

1. Murder of the first degree consists in killing a human being with express malice aforethought, or in perpetrating, or

attempting to prepetrate, any crime punishable with death; that is to say in general, when it is committed with a sedate, deliberate mind and formed design to take the life of, or to do some great or serious bodily injury to the person killed. Such design may be shown from the circumstances attending the act, such as the deliberate selection and use of a deadly weapon, a preconcerted hostile meeting, privily lying in wait, a previous quarrel or grudge, antecedent menaces or threats, or in preparation of means to effect such design or intent.

2. Murder of the second degree, is where there was no such deliberately formed design to take life or to perpetrate or attempt to perpetrate a crime punishable with death, but where, nevertheless, the killing was without justification or excuse; without any provocation or without sufficient provocation to reduce the homicide to the grade of manslaughter.

3. Manslaughter is the unlawful killing of a human being without malice express or implied.

Malice aforethought is the essence of murder. In manslaughter there is no malice.

Under the law and evidence in this case it is now your duty to find by your verdict of which of these grades of homicide the prisoner is guilty.

Whenever one person is killed by another, unless it be under the sentence of the law, it is presumed in law to be unlawful, and to have been done with malice aforethought until the contrary appears.

If the jury are satisfied from the proof that the prisoner at the time of the homicide stabbed or cut the deceased with a knife produced in this cause, which is a deadly weapon, with the intent to kill him, in pursuance of a sedate and deliberate mind and formed design to take his life or to do him some great or severe bodily injury, although such design may not have been formed until the precise time of killing—he would be guilty of murder with express malice aforethought and of the first degree under our

statute, and your verdict should be guilty in manner and form as he stands indicted.

It is claimed by the defendant that by reason of intoxication the condition of the prisoner's mind and his mental capacity were such that he was unable to form a specific intent or deliberate design to kill the deceased, and that therefore he is not guilty of murder of the first degree. Such a defence when set up must be proved to your satisfaction. As a general rule, drunkenness is no excuse for murder or any other crime whatever. This rule has been relaxed under the rulings in this State to the extent that drunkenness may reduce the grade of murder from the first to the second degree. In order to so reduce the grade of the crime you must be satisfied that the prisoner was so drunk as to be utterly incapable of forming a specific intent or deliberate design to kill. If you are so satisfied from the proof your verdict should be not guilty in manner and form as he stands indicted, but guilty of murder of the second degree.

It is further urged in behalf of the prisoner, that his crime is only manslaughter, for the reason, that the deceased had previous to the killing made an assault upon the prisoner in an altercation between them in another house, and that the prisoner while in the heat of passion occasioned thereby, killed the deceased before his passion had time to subside and reason to interpose.

If you are satisfied that the prisoner killed the deceased in a sudden brawl or quarrel, under provocation, in the heat of passion, without time for reflection or deliberation, and without cooling time, then your verdict should be, not guilty, in manner and form as he stands indicted, but guilty of manslaughter.

In order to reduce the offence to manslaughter, however, you must be satisfied that the death wound was given upon provocation in a sudden brawl or altercation between the prisoner and the deceased, and in the heat of passion, without time for reflection and deliberation and without cooling time. Where death is produced by a deadly weapon, as in this case, the provocation must be very great to reduce the crime to manslaughter. No mere words, how-

Charge.

ever insulting, no defying gestures or weak assault will constitute such a provocation.

It is the duty of the State to prove to your satisfaction all the material elements of the crime charged. When proved, however, on the part of the State, and a defence is set up it is the duty of the prisoner to prove such defence to your satisfaction.

If you have any reasonable doubt upon the proof as to the guilt of the prisoner—such a reasonable doubt as your conscience compels you to entertain—you should give the prisoner the benefit of that doubt.

Now gentlemen it is your grave and important duty to determine the question of the prisoner's guilt upon the proof in this case. Under the law, you are the sole judges of the proof; it is yours to determine the grade of the offence. With the consequences of your verdict you have nothing whatever to do. The single question for you to determine is, whether the prisoner is guilty or innocent?

*Verdict guilty.*